AO 106 (Rev. 04/10) Application for a Search Warrant

AUTHORIZED AND APPROVED/DATE:  s/Allison B Christian 1/26/24

# UNITED STATES DISTRICT COURT

## for the

### Western District of Oklahoma

*amb*
*1/26/24*

| | |
|---|---|
| In the Matter of the Search of | ) |
| OF INSTAGRAM USER IDS 49318588019, 48060124914 USED BY DAVID DEZORT THAT IS STORED AT PREMISES CONTROLLED BY META PLATFORMS, INC. | ) ) ) ) ) |

Case No. M-24- 69· AMG

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location):*

See Attachment "A"

located in the ___Northern___ District of ___California___, there is now concealed *(identify the person or describe the property to be seized):*

See Attachment "B"  which is incorporated by reference herein.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more):*

- ☑ evidence of a crime;
- ☑ contraband, fruits of crime, or other items illegally possessed;
- ☑ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 2252A(a)(2) | Distribution and/or receipt of child pornography |
| 18 U.S.C. § 2252(a)(5)(B) | Possession of and access with intent to view child pornography |

The application is based on these facts:

See attached Affidavit of FBI Special Agent James Wren, which is incorporated by reference herein.

- ☑ Continued on the attached sheet.
- ☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

James Wren, Special Agent, FBI
*Printed name and title*

Sworn to before me and signed in my presence.

Date: ___1/26/24___

_____
*Judge's signature*

City and state: Oklahoma City,  Oklahoma

AMANDA MAXFIELD GREEN, U.S. MAGISTRATE JUDGE
*Printed name and title*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

IN THE MATTER OF THE SEARCH          )
OF INSTAGRAM USER IDS 49318588019,   )
48060124914 USED BY DAVID DEZORT     )
THAT IS STORED AT PREMISES           )
CONTROLLED BY META PLATFORMS,        )
INC.                                 )

### AFFIDAVIT IN SUPPORT OF
### AN APPLICATION FOR A SEARCH WARRANT

I, James Wren, Special Agent with the Federal Bureau of Investigation ("FBI"), being duly sworn, hereby depose and state as follows:

1.    I am a Special Agent ("SA") of the FBI and have been so employed since July of 2019. Currently, I am assigned to the Woodward Resident Agency, Oklahoma City Field Office, and investigate criminal violations in the Woodward, Oklahoma, region.

2.    I am a graduate of the FBI Academy in Quantico, Virginia. As part of my training, I received approximately 20 weeks of instruction at the FBI Academy. During the training, I received instruction in a variety of investigative techniques commonly used in support of a wide range of the FBI's investigative priorities. The training included instruction regarding the use of confidential human sources, electronic and physical surveillance techniques, law enforcement tactics, search and seizure laws and techniques, interviewing strategies and skills, forensic techniques, and a variety of other subjects. While employed by the FBI, I have investigated various crimes, including, but not limited to, violent crimes against children. Based on my training and experience related to the investigation of child pornography and based upon interviews I have conducted with other

officers, defendants, informants, and other witnesses and participants in child exploitation, I am familiar with the ways that child pornography is manufactured and distributed. My familiarity includes the various means and methods by which producers of child pornography manufacture and distribute pornography, their use of cellular telephones, computers, and other electronic devices. Moreover, I am a federal law enforcement officer who is engaged in enforcing the criminal laws, including 18 U.S.C. §§ 2251, 2252, and 2252A, and I am authorized by law to request a search warrant.

3.    This Affidavit is in support of an application for a search warrant for information associated with certain Instagram accounts that are stored at the premises owned, maintained, controlled, or operated by Meta Platforms, Inc. ("Meta"), a company headquartered in Menlo Park, California. The Instagram accounts are believed to be used by David Dezort ("DEZORT"). DEZORT resides in the Western District of Oklahoma at 3415 Quail Springs Drive, Apt 9, Woodward, Oklahoma 73802 (the "SUBJECT PREMISES"). The Instagram records to be searched, as described in **Attachment A,** are for the account associated with the following identifiers:

- Believed User: David Dezort ("**SUBJECT ACCOUNT 1**")
    - o   Instagram Account Identifier: atyp.icalidiot
    - o   Instagram ID Number: **48060124914**
- Believed User: David Dezort ("**SUBJECT ACCOUNT 2**")
    - o   Instagram Account Identifier: prettydancingflowers8
    - o   Instagram ID Number: **49318588019**

2

(collectively, the **"SUBJECT ACCOUNTS"**), and seize evidence for items described in **Attachment B**, that constitute evidence and instrumentalities of violations of federal criminal law, namely 18 U.S.C. § 2252A(a)(5)(B) (knowingly possessing one or more materials that contain images of child pornography), more particularly described in **Attachment B**. I served preservation requests on Instagram for the **SUBJECT ACCOUNTS** on November 28, 2023. As discussed herein, the **SUBJECT ACCOUNTS** are linked to DEZORT, *inter alia*, through known email address idiotidiot2@tutanota.com utilized by DEZORT, as well as the other circumstances set forth in this Affidavit.

4.      An individual violates 18 U.S.C. § 2252A(a)(5)(B) by "knowingly possess[ing], or knowingly access[ing] with intent to view, any book, magazine, periodical film, videotape, computer disk, or any other material that contains an image of child pornography that has been mailed, or shipped or transported using any means or facility of interstate or foreign commerce or in or affecting interstate or foreign commerce by any means, including by computer, or that was produced using materials that have been mailed, or shipped or transported in or affecting interstate or foreign commerce by any means, including by computer."

5.      Based upon the investigation in this case as set forth below, as well as my training and experience, I submit that there is probable cause to believe that evidence of a crime, including a violation of 18 U.S.C. § 2252A(a)(5)(B), exists on the **SUBJECT ACCOUNTS**. Specifically, I believe that there is probable cause to believe that DEZORT has used Instagram to facilitate his crime, and that there is probable cause to search the

3

information described in **Attachment A** for evidence of this crime, as described in **Attachment B.**

6.      Based on my training and experience, I am aware that individuals involved in crimes such as possessing, buying, selling, and facilitating the exchange of child sexual abuse material ("CSAM"), utilize social networking sites, such as Instagram, in order to communicate with co-conspirators or with collaborators. Subjects know that law enforcement can access records of phone calls and believe that communicating via social networking sites provides greater insulation from law enforcement. Furthermore, social networking sites are easily accessible from smartphones and other electronic devices, and because communication via social networking sites is instantaneous, it is convenient for individuals involved in criminal activity to communicate using such sites. Other evidence that can be obtained from social networking sites such as Instagram includes photographs, videos, and communications containing the names of possible collaborators.

7.      The facts comprising the basis for this Affidavit are personally known by me or have been relayed to me directly and indirectly by others familiar with this investigation, including FBI personnel and other law enforcement officers. Because this Affidavit is being submitted for the limited purpose of establishing probable cause for a search warrant, I have not included every fact known to me concerning this investigation. I have set forth only facts that I believe as necessary to establish probable cause to believe that violations of the criminal statutes have occurred.

## FACTS AND CIRCUMSTANCES

8.     The FBI is conducting a criminal investigation into David Lee Dezort (the "SUBJECT").

9.     On or about September 5, 2023, the FBI Oklahoma City Field Office learned that an individual in Louisiana had disclosed information related to a crime in Oklahoma. The FBI New Orleans field office notified me that Grant Durtschi ("Durtschi"), a subject in New Orleans, disclosed that he photographed minor children. Many of the images were sexually suggestive and involved prepubescent children. Durtschi then sold these photographs on the Internet. Specifically, Durtschi produced photographs of a minor known as "P.J." Many of the photos in P.J.'s collection showed her prepubescent nude genitalia.

10.     Durtschi maintained a ledger of clients who purchased images from him. Durtschi disclosed to FBI New Orleans that he sold photos from P.J.'s collection to the SUBJECT. For P.J.'s collection, the SUBJECT paid Durtschi approximately $1,465.00 via Venmo using an alias such as "John Nobody."

11.     According to Venmo records, from January 2021 through August 2021, "John Nobody," using the email address idiotidiot2@tutanota.com, sent approximately $1,465.00 in total through multiple transactions to Durtschi.

12.     Durtschi told law enforcement that he knew the SUBJECT was from Oklahoma because he asked the SUBJECT to provide his driver's license to Durtschi for verification. The address that was listed on his driver's license at that time was 310 Hemlock, Woodward, Oklahoma 73801. According to law enforcement databases, the

5

SUBJECT was issued a new license on July 9, 2021, which listed the **SUBJECT PREMISES**. Law enforcement databases also show that the SUBJECT was last associated with 310 Hemlock, Woodward, OK 73801 in March 2021 and became associated the **SUBJECT PREMISES** in March 2021. Accordingly, it appears that the SUBJECT moved residences in March 2021.

13.     Law enforcement databases also indicate that the SUBJECT lives with Katrina Taylor ("Taylor"), who appears to be his mother, at the **SUBJECT PREMISES**. Taylor became associated with the **SUBJECT PREMISES** in February 2021.

14.     Durtschi and the SUBJECT primarily communicated through Instagram, but they also communicated through Wickr and Telegram. According to Durstchi, the SUBJECT's usernames usually included "stupid" or "idiot."

15.     From their communications, Durtschi described the SUBJECT as having incestuous goals, meaning that the SUBJECT wished to have a baby with a woman for the purpose of producing a child with whom he could have sexual relations.  Durtschi also knew that the SUBJECT lived with his parents and worked at a grocery store in Woodward, Oklahoma.

16.     FBI New Orleans received the relevant Venmo records. The records were reviewed by an FBI Intel Analyst who found from IP addresses that the transactions stemmed from multiple locations in Oklahoma.

17.     The same FBI Intel Analyst received additional information from a suspicious activity report ("SAR") that the email address used for Venmo, idiotidiot2@tutanota.com (the "SUBJECT EMAIL ADDRESS") was associated with the

6

name "John Nobody," who had a date of birth of 5/11/1988, and telephone number of (580) 334-4506. The same FBI Intel Analyst linked the telephone number of (580) 334-4506 to the SUBJECT, who also had a date of birth of 5/11/1988.

18.    On September 7, 2023, I observed and confirmed that the SUBJECT works at the United Supermarket located at 2821 8th St, Woodward, Oklahoma.

## BACKGROUND CONCERNING INSTAGRAM[1]

19.    Instagram is a service owned by Meta, a United States company and a provider of an electronic communications service as defined by 18 U.S.C. §§ 3127(1) and 2510. Specifically, Instagram is a free-access social networking service, accessible through its website and its mobile application, that allows subscribers to acquire and use Instagram accounts, like the target account(s) listed in Attachment A, through which users can share messages, multimedia, and other information with other Instagram users and the general public.

20.    Meta collects basic contact and personal identifying information from users during the Instagram registration process.  This information, which can later be changed by the user, may include the user's full name, birth date, gender, contact e-mail addresses, physical address (including city, state, and zip code), telephone numbers, credit card or

---

[1] The information in this section is based on information published by Meta on its Instagram website, including, but not limited to, the following webpages: "Privacy Policy," https://privacycenter.instagram.com/policy/;    "Information  for  Law  Enforcement," https://help.instagram.com/494561080557017; and "Help Center," https://help.instagram.com.

bank account number, and other personal identifiers. Meta keeps records of changes made to this information.

21.    Meta also collects and retains information about how each user accesses and uses Instagram. This includes information about the Internet Protocol ("IP") addresses used to create and use an account, unique identifiers and other information about devices and web browsers used to access an account, and session times and durations.

22.    Each Instagram account is identified by a unique username chosen by the user. Users can change their usernames whenever they choose but no two users can have the same usernames at the same time. Instagram users can create multiple accounts and, if "added" to the primary account, can switch between the associated accounts on a device without having to repeatedly log-in and log-out.

23.    Instagram users can also connect their Instagram and Facebook accounts to utilize certain cross-platform features, and multiple Instagram accounts can be connected to a single Facebook account. Instagram accounts can also be connected to certain third-party websites and mobile apps for similar functionality. For example, an Instagram user can "tweet" an image uploaded to Instagram to a connected Twitter account or post it to a connected Facebook account or transfer an image from Instagram to a connected image printing service. Meta maintains records of changed Instagram usernames, associated Instagram accounts, and previous and current connections with accounts on Meta and third-party websites and mobile apps.

24.    Instagram users can "follow" other users to receive updates about their posts and to gain access that might otherwise be restricted by privacy settings (for example, users

8

can choose whether their posts are visible to anyone or only to their followers). Users can also "block" other users from viewing their posts and searching for their account, "mute" users to avoid seeing their posts, and "restrict" users to hide certain activity and prescreen their comments. Instagram also allows users to create a "close friends list" for targeting certain communications and activities to a subset of followers.

25.     Users have several ways to search for friends and associates to follow on Instagram, such as by allowing Meta to access the contact lists on their devices to identify which contacts are Instagram users. Meta retains this contact data unless deleted by the user and periodically syncs with the user's devices to capture changes and additions. Users can similarly allow Meta to search an associated Facebook account for friends who are also Instagram users. Users can also manually search for friends or associates.

26.     Each Instagram user has a profile page where certain content they create and share ("posts") can be viewed either by the general public or only the user's followers, depending on privacy settings. Users can customize their profile by adding their name, a photo, a short biography ("Bio"), and a website address.

27.     One of Instagram's primary features is the ability to create, edit, share, and interact with photos and short videos. Users can upload photos or videos taken with or stored on their devices, to which they can apply filters and other visual effects, add a caption, enter the usernames of other users ("tag"), or add a location. These appear as posts on the user's profile. Users can remove posts from their profiles by deleting or archiving them. Archived posts can be reposted because, unlike deleted posts, they remain on Meta's servers.

28.     Users can interact with posts by liking them, adding or replying to comments, or sharing them within or outside of Instagram.  Users receive notification when they are tagged in a post by its creator or mentioned in a comment (users can "mention" others by adding their username to a comment followed by "@").  An Instagram post created by one user may appear on the profiles or feeds of other users depending on a number of factors, including privacy settings and which users were tagged or mentioned.

29.     An Instagram "story" is similar to a post but can be viewed by other users for only 24 hours.  Stories are automatically saved to the creator's "Stories Archive" and remain on Meta's servers unless manually deleted.  The usernames of those who viewed a story are visible to the story's creator until 48 hours after the story was posted.

30.     Instagram allows users to broadcast live video from their profiles.  Viewers can like and add comments to the video while it is live, but the video and any user interactions are removed from Instagram upon completion unless the creator chooses to send the video to IGTV, Instagram's long-form video app.

31.     Instagram Direct, Instagram's messaging service, allows users to send private messages to select individuals or groups.  These messages may include text, photos, videos, posts, videos, profiles, and other information.  Participants to a group conversation can name the group and send invitations to others to join.  Instagram users can send individual or group messages with "disappearing" photos or videos that can only be viewed by recipients once or twice, depending on settings.  Senders can't view their disappearing messages after they are sent but do have access to each message's status, which indicates

whether it was delivered, opened, or replayed, and if the recipient took a screenshot. Instagram Direct also enables users to video chat with each other directly or in groups.

32.    Instagram offers services such as Instagram Checkout and Facebook Pay for users to make purchases, donate money, and conduct other financial transactions within the Instagram platform as well as on Facebook and other associated websites and apps. Instagram collects and retains payment information, billing records, and transactional and other information when these services are utilized.

33.    Instagram has a search function which allows users to search for accounts by username, user activity by location, and user activity by hashtag. Hashtags, which are topical words or phrases preceded by a hash sign (#), can be added to posts to make them more easily searchable and can be "followed" to generate related updates from Instagram. Meta retains records of a user's search history and followed hashtags.

34.    Meta collects and retains location information relating to the use of an Instagram account, including user-entered location tags and location information used by Meta to personalize and target advertisements.

35.    Meta uses information it gathers from its platforms and other sources about the demographics, interests, actions, and connections of its users to select and personalize ads, offers, and other sponsored content. Meta maintains related records for Instagram users, including information about their perceived ad topic preferences, interactions with ads, and advertising identifiers. This data can provide insights into a user's identity and activities, and it can also reveal potential sources of additional evidence.

11

36.    In some cases, Instagram users may communicate directly with Meta about issues relating to their accounts, such as technical problems, billing inquiries, or complaints from other users.  Social networking providers like Meta typically retain records about such communications, including records of contacts between the user and the provider's support services, as well as records of any actions taken by the provider or user as a result of the communications.

37.    For each Instagram user, Meta collects and retains the content and other records described above, sometimes even after it is changed by the user (including usernames, phone numbers, email addresses, full names, privacy settings, email addresses, and profile bios and links).

38.    In my training and experience, evidence of who was using Instagram and from where, and evidence related to criminal activity of the kind described above, may be found in the files and records described above.  This evidence may establish the "who, what, why, when, where, and how" of the criminal conduct under investigation, thus enabling the United States to establish and prove each element or, alternatively, to exclude the innocent from further suspicion.

39.    For example, the stored communications and files connected to an Instagram account may provide direct evidence of the offenses under investigation.  Based on my training and experience, instant messages, voice messages, photos, videos, and documents are often created and used in furtherance of criminal activity, including to communicate and facilitate the offenses under investigation.

12

40.     In addition, the user's account activity, logs, stored electronic communications, and other data retained by Meta can indicate who has used or controlled the account. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence. For example, subscriber information, messaging logs, photos, and videos (and the data associated with the foregoing, such as date and time) may be evidence of who used or controlled the account at a relevant time. As an example, because every device has unique hardware and software identifiers, and because every device that connects to the Internet must use an IP address, IP address and device identifier information can help to identify which computers or other devices were used to access the account. Such information also allows investigators to understand the geographic and chronological context of access, use, and events relating to the crime under investigation.

41.     Account activity may also provide relevant insight into the account owner's state of mind as it relates to the offenses under investigation. For example, information on the account may indicate the owner's motive and intent to commit a crime (e.g., information indicating a plan to commit a crime), or consciousness of guilt (e.g., deleting account information in an effort to conceal evidence from law enforcement).

42.     Other information connected to the use of Instagram may lead to the discovery of additional evidence. For example, associated and linked accounts, stored communications, photos, and videos may reveal services used in furtherance of the crimes under investigation or services used to communicate with co-conspirators. In addition,

stored communications, contact lists, photos, and videos can lead to the identification of co-conspirators and instrumentalities of the crimes under investigation.

43.    Therefore, Meta's servers are likely to contain stored electronic communications and information concerning subscribers and their use of Instagram. In my training and experience, such information may constitute evidence of the crimes under investigation including information that can be used to identify the account's user or users.

## INFORMATION TO BE SEARCHED AND THINGS TO BE SEIZED

44.    I anticipate executing this warrant under the Electronic Communications Privacy Act, in particular 18 U.S.C. §§ 2703(a), 2703(b)(1)(A), and 2703(c)(1)(A), by using the warrant to require Instagram to disclose to the government copies of the records and other information (including the content of communications) particularly described in Section 1 of **Attachment B**. Upon receipt of the information described in Section 1 of **Attachment B**, government-authorized persons will review that information to locate items described in Section 2 of **Attachment B**.[2]

45.    Pursuant to 18 U.S.C. § 2703(g), the government will execute this warrant by serving it on Meta. Because the warrant will be served on Meta, who will then compile the requested records at a time convenient to it, reasonable cause exists to permit the execution of the requested warrant at any time in the day or night.

---

[2] Pursuant to 18 U.S.C. § 2703(g), the presence of a law enforcement officer is not required for the service or execution of this warrant.

14

## REQUEST FOR A NON-DISCLOSURE ORDER

46.     The United States requests the Court to require Meta not to notify any person,
including the subscribers or customers of the account(s) listed in the above warrant issued
pursuant to this application for one year following the date of the Court's Order pursuant
to 18 U.S.C. § 2705. This Court has authority under 18 U.S.C. § 2705(b) to issue "an order
commanding a provider of electronic communications service or remote computing service
to whom a warrant, subpoena, or court order is directed, for such period as the court deems
appropriate, not to notify any other person of the existence of the warrant, subpoena, or
court order." *Id.* In this case, such order would be appropriate because the search warrant
related to an ongoing criminal investigation that is neither public nor known to all the
subjects of the investigation, and its disclosure will alert the subject, and as yet unknown
other subjects, to the ongoing investigation.  Accordingly, there is reason to believe that
notification of the existence of the requested Order(s) will seriously jeopardize the
investigation, including by endangering the life or physical safety of an individual, giving
the subject, and as yet unknown other subjects, an opportunity to flee or continue flight
from prosecution, destroy or tamper with evidence, change patterns of behavior, or notify
confederates. *See* 18 U.S.C. § 2705(b).  Some of the evidence in this investigation is stored
electronically.  If alerted to the investigation, the subject, and as of yet unknown other
subjects, under investigation could destroy that evidence, including information saved to
their personal electronic devices. Accordingly, there is good cause to order the provider to
not disclose these documents because their premature disclosure will seriously jeopardize

that investigation. As such, there is good cause to seal these documents because their premature disclosure will seriously jeopardize that investigation.

## CONCLUSION

47.    I submit there is probable cause to believe that the items identified in **Attachment B** have been used in the commission of a crime and constitute evidence and instrumentalities of violations of 18 U.S.C. § 2252A(a)(5)(B) (knowingly possessing one or more materials that contain images of child pornography) and that the foregoing will be found on the **SUBJECT ACCOUNTS** to be searched, as identified in **Attachment A**.

48.    Additionally, I submit that there is reason to believe that disclosure of this search warrant will seriously jeopardize this investigation, including by causing: endanger the life or physical safety of another; give the subject, and as of yet unknown other subjects, an opportunity to flee or continue flight from prosecution; destroy or tamper with evidence; change patterns of behavior; notify confederates; and otherwise seriously jeopardize the investigation. *See* 18 U.S.C. § 2705(b).

49.    The Court has jurisdiction to issue the requested warrant because it is "a court of competent jurisdiction" as defined by 18 U.S.C. § 2711. 18 U.S.C. §§ 2703(a), (b)(I)(A) & (c)(I)(A). Specifically, the Court is "a district court of the United States…that – has jurisdiction over the offense being investigated." 18 U.S.C. § 2711 (3)(A)(i).

50.    Based on the foregoing, I request this Court to issue the requested search warrant and non-disclosure Order.

Respectfully submitted,

James Wren
Special Agent
Federal Bureau of Investigation

Signed before me on this ___26th___ day of January, 2024.

AMANDA MAXFIELD GREEN
UNITED STATES MAGISTRATE JUDGE

## ATTACHMENT A

### Property to be Searched

This warrant applies to information held by Meta Platforms, Inc. ("Meta") and associated to the following Instagram accounts:

- Believed User: David Dezort (**"SUBJECT ACCOUNT 1"**)

  o Instagram Account Identifier: atyp.icalidiot

  o Instagram ID Number: **48060124914**

- Believed User: David Dezort (**"SUBJECT ACCOUNT 2"**)

  o Instagram Account Identifier: prettydancingflowers8

  o Instagram ID Number: **49318588019**

That are stored at premises owned, maintained, controlled, or operated by Meta Platforms, Inc. a company headquartered in Menlo Park, California

## ATTACHMENT B

### Particular Things to be Seized

**I.      Information to be disclosed by Meta related to Instagram**

To the extent that the information described in Attachment A is within the possession, custody, or control of Meta, regardless of whether such information is located within or outside of the United States, and including any messages, records, files, logs, or other information that has been deleted but is still available to Meta, or has been preserved pursuant to a request made under 18 U.S.C. § 2703(f), Meta is required to disclose the following information to the government for each account or identifier listed in Attachment A:

    a.  All business records and subscriber information, in any form kept, pertaining to the account, including:

        i.  Identity and contact information (past and current), including full name, e-mail addresses, physical address, date of birth, phone numbers, gender, hometown, occupation, websites, and other personal identifiers;

        ii.  All Instagram usernames (past and current) and the date and time each username was active, all associated Instagram accounts (including those linked by machine cookie), and all records or other information about connections with Facebook, third-party websites, and mobile apps (whether active, expired, or removed);

   iii.  Length of service (including start date), types of services utilized, purchases, and means and sources of payment (including any credit card or bank account number) and billing records;

   iv.  Devices used to login to or access the account, including all device identifiers, attributes, user agent strings, and information about networks and connections, cookies, operating systems, and apps and web browsers;

   v.  All advertising information, including advertising IDs, ad activity, and ad topic preferences;

   vi.  Internet Protocol ("IP") addresses used to create, login, and use the account, including associated dates, times, and port numbers;

   vii.  Privacy and account settings, including change history; and

   viii.  Communications between Meta and any person regarding the account, including contacts with support services and records of actions taken;

b.  All content (whether created, uploaded, or shared by or with the account), records, and other information relating to videos (including live videos and videos on IGTV), images, stories and archived stories, past and current bios and profiles, posts and archived posts, captions, tags, nametags, comments, mentions, likes, follows, followed hashtags, shares, invitations, and all associated logs and metadata, from October 1, 2020, to present;

2

c. All content, records, and other information relating to communications sent from or received by the account including but not limited to:

    i. The content of all communications sent from or received by the account, including direct and group messages, and all associated multimedia and metadata, including deleted and draft content if available;

    ii. All records and other information about direct, group, and disappearing messages sent from or received by the account, including dates and times, methods, sources and destinations (including usernames and account numbers), and status (such as delivered, opened, replayed, screenshot);

    iii. All records and other information about group conversations and video chats, including dates and times, durations, invitations, and participants (including usernames, account numbers, and date and time of entry and exit); and

    iv. All associated logs and metadata;

d. All content, records, and other information relating to all other interactions between the account and other Instagram users from October 1, 2020, to present, including but not limited to:

    i. Interactions by other Instagram users with the account or its content, including posts, comments, likes, tags, follows (including unfollows,

3

approved and denied follow requests, and blocks and unblocks),

shares, invitations, and mentions;

   ii.  All users the account has followed (including the close friends list),

unfollowed, blocked, unblocked, muted, restricted, or denied a

request to follow, and of users who have followed, unfollowed,

blocked, unblocked, muted, restricted, or denied a request to follow

the account;

   iii.  All contacts and related sync information; and

   iv.  All associated logs and metadata;

  e.  All records of searches performed by the account from October 1, 2020, to

present; and

  f.  All location information, including location history, login activity,

information geotags, and related metadata from October 1, 2020, to present.

Meta is hereby ordered to disclose the above information to the government with 14

days of the issuance of this warrant.

**II.    Information to be seized by the government**

All information described above in Section 1 that constitutes evidence and

instrumentalities of violations of 18 U.S.C. § 2252A(a)(5)(B) involving David Dezort,

from October 1, 2020, to present, including, for each User ID identified on Attachment A,

information pertaining to the following matters:

  a.  Evidence indicating how and when the Instagram accounts were accessed or

used, to determine the chronological and geographic context of account

4

access, use, and events relating to the crime under investigation and to the Instagram account owner;

b. Evidence indicating the Instagram account owner's state of mind as it relates to the crime under investigation;

c. The identity of the person(s) who created or used the user ID, including records that help reveal the whereabouts of such person(s).

This warrant authorizes a review of electronically stored information, communications, other records, and information disclosed pursuant to this warrant in order to locate evidence and instrumentalities described in this warrant. The review of this electronic data may be conducted by any government personnel assisting in the investigation, who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, and technical experts. Pursuant to this warrant, the FBI may deliver a complete copy of the disclosed electronic data to the custody and control of attorneys for the government and their support staff for their independent review.